UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
GREAT AMERICAN INSURANCE COMPANY,

        Plaintiff,

-against-

AIG SPECIALTY INSURANCE COMPANY,

        Defendant.
------------------------------------- X

Civil Action No.:

**COMPLAINT FOR DECLARATORY JUDGMENT & EQUITABLE CONTRIBUTION**

**JURY DEMANDED**

    Plaintiff Great American Insurance Company ("GAIC") by its attorneys, Ropers Majeski P.C., as and for its Complaint against defendant AIG Specialty Insurance Company ("AIG") alleges as follows:

## NATURE OF THE ACTION

    1.    GAIC brings this complaint for a declaratory judgment seeking a declaration that AIG has an obligation to provide insurance coverage (defense and/or indemnification) to Houlihan Lawrence, Inc. ("Houlihan") under a Specialty Risk Protector Insurance Policy (the "AIG Policy") issued to HomeServices of America, Inc. ("Home") in connection with an underlying civil action entitled *Goldstein, et. al. v. Houlihan Lawrence, Inc*., pending in the New York State Supreme Court, Westchester County, Index No. 60767/2018 (hereafter, the "Underlying Action").

    2.    In the Underlying Action, the putative class action plaintiffs allege that Houlihan, a subsidiary of Home, engaged in firm-wide dishonest and fraudulent activity relating to the purchase and sale of real property from January 1, 2011 to the present wherein Houlihan represented both the buyer and seller in the same transaction.

3. Houlihan provided notice of the Underlying Action to GAIC and GAIC is providing a defense to Houlihan in the Underlying Action subject to a reservation of rights letter.

4. Houlihan also provided notice of the Underlying Action to AIG and AIG has denied coverage – both defense and indemnification – to Houlihan.

5. GAIC seeks a declaration that coverage for the Underlying Action is available to Houlihan under the AIG Policy as the conduct and acts alleged in the Underlying Action potentially give rise to a covered claim, which triggers AIG's duty to defend.

6. Consequently, GAIC seeks a declaration that AIG has an obligation to defend Houlihan in connection with the Underlying Action including paying its equitable pro rata share of all future defense fees and costs. GAIC also seeks an Order under the doctrine of equitable contribution directing AIG to reimburse GAIC for its equitable pro rata share of all defense fees and costs previously paid by GAIC.

## PARTIES

7. GAIC is an insurance company organized and existing under the laws of the State of Ohio and having its principal place of business in Cincinnati, OH. GAIC is authorized to and does conduct insurance business in the State of New York.

8. Upon information and belief, AIG is an insurance company organized and existing under the laws of the State of Illinois and having its principal place of business in New York, New York. AIG is authorized to and does conduct insurance business in the State of New York.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000 exclusive of interests and costs.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to the claim occurred in this District, or alternatively, defendant AIG is subject to personal jurisdiction in this District.

## UNDERLYING ACTION

11. This declaratory judgment action arises out of the Underlying Action, which was originally filed in July 2018.

12. The operative putative class action complaint, the Third Amended Complaint ("TAC"), was filed in the Underlying Action on June 10, 2019. A copy of the TAC is annexed hereto as **Exhibit A**.

13. According to the TAC, the plaintiffs in the Underlying Action focus their claims and allegations on one aspect of Houlihan's business: Houlihan's use of "dual agency" arrangements when representing clients during the purchase and sale of real estate.

14. The plaintiffs in the Underlying Action allege that New York law mandates specific, comprehensive and effective written disclosures from real estate agents before a dual agency is allowed. These plaintiffs contend that real estate agents are held strictly liable if they cannot show that they made proper disclosures, irrespective of the agent's good or bad faith and without regard to whether or not the agent's clients were injured.

15. The plaintiffs in the Underlying Action allege that Houlihan's dual agency scheme is institutionalized in that Houlihan not only encourages, but actively facilitates the scheme by paying "kickbacks" to agents that secure double commissions through dual agent transactions. The plaintiffs allege that these kickbacks encourage Houlihan agents to put their personal interest in a bigger commission check ahead of the interests of their clients by incentivizing Houlihan agents to steer clients into dual agent transactions, even though Houlihan knows that dual agency

transactions rarely, if ever, serve a client's interest. The plaintiffs allege that the conflict of interest inherent in Houlihan's undisclosed incentive compensation scheme makes it impossible for Houlihan sales agents to represent homebuyers and sellers with undivided and undiluted loyalty and is incompatible with Houlihan's fiduciary duties under New York law.

16. The plaintiffs in the Underlying Action also allege that Houlihan engages in fraudulent, deceptive and unfair business practices by among other things, failing to disclose all material information necessary for plaintiffs to decide whether or not to consent to dual agency; acting as a dual agent without the informed written consent of both parties to the transaction; and intentionally misleading Class members and concealing and suppressing material facts concerning dual agency to induce buyers and sellers to enter into agency relationships and unwittingly acquiesce to dual agency.

17. The plaintiffs in the Underlying Action seek to certify a class of consumers in Westchester, Putnam, and Dutchess counties defined as follows: "All buyers and sellers of residential real estate in Westchester, Putnam, and Dutchess counties from January 1, 2011 to the present wherein Houlihan Lawrence represented both the buyer and seller in the same transaction."

18. In connection with the putative class, the class representatives in the Underlying Action are comprised of the following:

    a.    Dr. Ellyn and Tony Berk, who sold their property located in White Plains, on June 30, 2014;

    b.    Paul Benjamin, who purchased his property located in Bedford, on July 13, 2016; and

    c.    Pamela Goldstein, who purchased her property located in White Plains, on May 22, 2017.

19. The plaintiffs in the Underlying Action seek the return of sales commissions Houlihan collected on real estate transactions in which Houlihan acted as an undisclosed, non-consensual dual agent, with interest from the time such commissions were paid.

## THE INSURANCE POLICIES

20. GAIC issued a Real Estate Professional Liability Insurance Policy to Houlihan for the July 26, 2016 to July 26, 2017 policy period, bearing policy number RAB3084795-16 (the "GAIC Policy").  A copy of the GAIC Policy is annexed hereto as **Exhibit B**.  The GAIC Policy has a limit of liability of $5 million per Claim, which is subject to a $50,000 per Claim retention.

21. The GAIC Policy was cancelled effective January 9, 2017 pursuant to a Cancellation Endorsement.[1]  Pursuant to the Extended Reporting Period Endorsement purchased at the time of cancellation, the Extended Reporting Period is January 9, 2017 to January 9, 2020.  The GAIC Policy does not provide any coverage for acts which occurred on or after January 9, 2017.

22. AIG issued a Specialty Risk Protector Insurance Policy to Home for the April 1, 2018 to April 1, 2019 policy period, bearing policy number 01-307-97-95.  A copy of the AIG Policy is annexed hereto as **Exhibit C**.  The AIG Policy has a limit of liability of $5 million per Claim, which is subject to a $1,000,000 per Claim retention.  Finally, the AIG Policy has a Retroactive Date of July 1, 2010 and a Continuity Date of July 1, 2010.

---

[1] Pursuant to publicly available information, as of January 9, 2017, Houlihan was acquired by Home and became a wholly owned subsidiary of Home.

## THE CLAIM & AIG's DENIAL OF COVERAGE

23. By letter dated July 27, 2018, Houlihan, via its personal counsel, provided first notice to GAIC of the Underlying Action. A copy of the July 27, 2018 letter is attached hereto as **Exhibit D**.

24. AIG's Named Insured, Home acquired Houlihan on January 1, 2017 and Houlihan became a "Subsidiary" of Home as of that date. As a consequence, at the time the AIG Policy was issued on April 1, 2018, Houlihan as a "Subsidiary" was an insured under the AIG Policy.

25. Home, as the parent company of Houlihan, provided timely notice of the Underlying Action to AIG through Home's insurance broker, Stuart Turner of Hays Company.

26. GAIC issued a reservation of rights letter on July 31, 2018 to Houlihan. A copy of the July 31, 2018 reservation of rights letter is attached hereto as **Exhibit E**.

27. GAIC has and continues to provide a defense to Houlihan in the Underlying Action, but defense costs are eroding the policy limit.

28. By letter dated January 9, 2019, AIG wrote to Myriam Pierre Warren, Senior Counsel of Home, and denied coverage – both defense and indemnification – for the Underlying Action. A copy of the January 9, 2019 letter is attached hereto as **Exhibit F**.

29. AIG relied on the facts and allegations asserted in the First Amended Complaint filed in the Underlying Action to support its denial of coverage. The substantive facts and allegations in the First Amended Complaint are the similar to those asserted in the operative TAC.

30. In fact, AIG spends almost three (3) full pages of the January 9th letter reciting the facts and allegations in the First Amended Complaint, including the following pertinent facts:

- [Houlihan] represented the Plaintiff, Pamela Goldstein in connection a purchase of property on *May 22, 2017*. Plaintiffs assert that [Houlihan] also represented the seller in the transaction.

- Plaintiffs seek to certify a class action under CPLR Article 9 on behalf of themselves and a class of consumers in Westchester, Putnam and Dutchess counties as defined as follows: All buyers and sellers of residential real estate in Westchester, Putnam, and Dutchess counties *from January 1, 2011 to the present* wherein Houlihan Lawrence represented both the buyer and seller in the same transaction.

31. AIG's declination of coverage is primarily based on a "related events" argument that correlates all wrongful conduct to a time period "before the effective time that Home [ ] obtained Management control of [Houlihan] on January 1, 2017."

32. As such, AIG concludes that "all Class members real estate transactions, arise from a common nucleus of facts and, therefore, these Related Acts shall be considered to have occurred at the time the first such Related Act occurred, namely January 1, 2011."

33. AIG's reliance on the "related acts" argument in refusing to provide a defense to Houlihan is improper and contrary to established New York law.

34. Specifically, AIG acknowledges in its January 9, 2019 letter that certain claims asserted against Houlihan are alleged to have occurred <u>after</u> Home acquired Houlihan and would therefore fall within the coverage afforded by the AIG Policy and could trigger the AIG policy.

35. In fact, AIG specifically notes that the purchase and sale of Pamela Goldstein's property took place on May 22, 2017, a date which is clearly within the scope of coverage afforded

by the AIG Policy and outside of the scope of coverage of the GAIC Policy which was cancelled on January 9, 2017 and provides no coverage for any conduct after that date.

36.  Moreover, the Underlying Action was brought as a putative class action by plaintiffs seeking to certify a class beginning on January 1, 2011 and <u>continuing to the present</u>.  As such, there can be and likely will be additional class members that engaged with Houlihan after the January 1, 2017 acquisition date and for whom all of the alleged wrongful acts for which they seek to recover occurred after January 1, 2017.  Absent coverage under the AIG Policy, Houlihan will have no coverage to the extent these plaintiffs are successful.

37.  In addition, there has been no final finding, adjudication, stipulation, admission, or any other enforceable conclusion as to when the alleged wrongful acts actually occurred.

38.  Unless and until there is some kind of conclusive final finding or ruling as to when the alleged wrongful acts occurred, such as a final adjudication, stipulation, or admission, it is not possible for AIG to conclude that the acts are all "related" and occurred on "on January 1, 2011, before the effective time that [Home] obtained Management control of [Houlihan] on January 1, 2017."   This is particularly true where the Underlying Action involves thousands of individual home transactions involving thousands of different brokers and thousands of different purchasers and sellers in three separate counties – Westchester, Dutchess and Putnam – in New York State.

39.  No other conclusion can be reached than the claims presented in the Underlying Action are potentially covered claims under the AIG Policy.

40.  Consequently, a potential for coverage plainly exists on the face of operative TAC.

41.  New York law is clear that an insurer has an immediate duty to defend its insured for any claim that is potentially covered by the policy.  An insurer who fails to do so in breach of the policy and in violation of New York law.

42. AIG is in breach of its contractual duty to defend Houlihan in the Underlying Action.

## CORRESPONDENCE BETWEEN GAIC AND AIG

43. By letter dated April 20, 2020, GAIC wrote to AIG and demanded that AIG immediately contribute to the defense of Houlihan in the Underlying Action. A copy of the April 20, 2020 letter is attached hereto as **Exhibit G**.

44. Without citing or relying on any case law, and refusing to address the issues raised in GAIC's April 20, 2020 correspondence, by letter dated May 5, 2020, AIG responded to GAIC's April 20th letter and refused to contribute to the defense of Houlihan in the Underlying Action. A copy of the May 5, 2020 letter is attached hereto as **Exhibit H**.

45. By letter dated May 15, 2020, GAIC, again, wrote to AIG and demanded that AIG immediately contribute to the defense of Houlihan in the Underlying Action. A copy of the May 15, 2020 letter is attached hereto as **Exhibit I**.

46. GAIC has not received a response to its May 15th letter.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Declaratory Judgment)**

47. GAIC repeats and realleges each and every allegation set forth in paragraphs 1 through 46 hereof as if set forth at length herein.

48. Houlihan, via Home, provided timely notice of the Underlying Action to AIG.

49. The TAC, the operative pleading in the Underlying Action, contains facts and allegations that trigger coverage under the AIG Policy.

50. AIG has improperly denied coverage for the Underlying Action and has improperly refused to participate in the defense of Houlihan in the Underlying Action in breach of the terms of the AIG Policy.

51. GAIC has wrongfully been forced to incur one hundred (100) percent of the defense costs on behalf of Houlihan in the Underlying Action.

52. There is a real, substantial and justiciable issue in controversy between the parties hereto with respect to the existence of insurance coverage.

53. A judicial determination and a declaration of the rights and obligations of the parties is necessary and appropriate at this time because GAIC has no adequate remedy at law which will resolve the current controversy.

54. GAIC is entitled to a declaration that AIG has an obligation to defend Houlihan in connection with the Underlying Action and requests that the Court enter a judgment directing AIG to pay its equitable pro rata share of all defense fees and costs incurred by Houlihan in its defense of the Underlying Action.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Equitable Contribution)**

55. GAIC repeats and realleges each and every allegation set forth in paragraphs 1 through 54 hereof as if set forth at length herein.

56. GAIC and AIG each issued insurance policies that contain a duty to defend Houlihan in the Underlying Action.

57. GAIC has incurred almost $2 million in defense costs on behalf of Houlihan in the Underlying Action.

58. AIG has improperly refused to participate in the defense of Houlihan in the Underlying Action.

59. GAIC has paid more than its pro-rata equitable share of the defense costs incurred on behalf of Houlihan in the Underlying Action.

60. By refusing to contribute to the defense of Houlihan in the Underlying Action, AIG has unjustly imposed upon GAIC the burden of paying more than its equitable share of the defense costs incurred on behalf of Houlihan in the Underlying Action.

61. GAIC is therefore entitled to contribution from AIG for the difference between the amount it has paid towards the defense of Houlihan in the Underlying Action and its equitable pro rata share.

## JURY DEMAND

62. Plaintiff hereby demands a trial by jury on all issues triable before a jury.

**WHEREFORE**, Plaintiff demands judgment as follows:

(a) on the First Cause of Action, for a declaration that AIG has a duty to defend Houlihan in the Underlying Action and pay its pro rata share of all defense fees and costs incurred by Houlihan in defending the Underlying Action;

(b) on the Second Cause of Action, declaring that GAIC is entitled to contribution from AIG for its proper allocation and equitable share of the defense costs incurred and paid by GAIC for Houlihan's defense in the Underlying Action; and

(c) for such other and further relief as the Court deems just and proper.

Dated: New York, New York.
       June 16, 2020

ROPERS MAJESKI PC

By: _____
ERIC C. WEISSMAN
GEOFFREY W. HEINEMAN
*Attorneys for Plaintiff*
GREAT AMERICAN INSURANCE
COMPANY
750 Third Avenue, 25th Floor
New York, NY  10017
(212) 668-5927