```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
                                         :    20cv4596 (DLC)
GREAT AMERICAN INSURANCE COMPANY,        :
                                         :    OPINION AND ORDER
                                         :
                    Plaintiff,           :
                                         :
                                         :
          -v-                            :
                                         :
AIG SPECIALTY INSURANCE COMPANY,         :
                                         :
                                         :
                    Defendant.           :
                                         :
---------------------------------------- X

APPEARANCES

For the plaintiff:
James Ruggeri
Edward Parks, II
Sarah Hunkler
Shipman & Goodwin LLP
1875 K Street NW, Suite 600
Washington, DC 20036

Robert Corp
Shipman & Goodwin LLP
400 Park Avenue, Ste 5th Floor
New York, NY 10022

Michael Jacobson
Clausen Miller
28 Liberty Street 39th Floor
New York, NY 10005

For the defendant:
Joseph Finnerty, III
Eric Connuck
Megan Shea
DLA Piper US LLP (NY)
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
```

DENISE COTE, District Judge:

Great American Insurance Company ("Great American") is suing AIG Specialty Insurance Company ("AIG") for a declaratory judgment that AIG has an obligation to assist in the defense of Houlihan/Lawrence, Inc. ("Houlihan"). Great American and AIG have cross-moved for summary judgment. For the following reasons, Great American's motion is granted.

## Background

The following facts are undisputed. Houlihan is a real estate brokerage firm that operates in New York. Great American is currently defending Houlihan in a class action lawsuit. At issue is whether AIG must contribute to this defense based upon insurance policies AIG issued to Houlihan's parent company, HomeServices of America, Inc. ("HomeServices"). HomeServices acquired Houlihan on January 1, 2017.

I. The AIG Insurance Policies

AIG issued two Specialty Risk Protector Insurance Policies ("AIG Policies") to HomeServices for the period of April 1, 2018 to April 1, 2019. The AIG Policies cover wrongful acts[1] -- also

---

[1] The AIG Policies define "wrongful act" as "any negligent act, error, or omission, misstatement or misleading statement in an Insured's performance of Professional Services for others

2

known as "Third Party Events" -- that occurred after the AIG Policies' Retroactive date, which is July 1, 2010.  Coverage includes the "duty to defend a Suit for a Wrongful Act."

The AIG Policies cover HomeServices and "any Subsidiary thereof."  Houlihan is one of those subsidiaries.  The AIG Policies contain limitations on the coverage of subsidiaries, however, including that

> coverage afforded under this policy shall only apply to Loss arising out of . . . <u>Third Party Events occurring or allegedly occurring after the effective time that the Named Entity obtained Management Control of such Subsidiary</u> and prior to the time that such Named Entity ceased to have Management Control of such Subsidiary.

(emphasis added).

Finally, the General Terms and Conditions sections of the AIG Policies provide that "[a]ll Related Acts shall be considered to have occurred at the time the first such Related Act occurred."  The AIG Policies define "related acts" as all "Third Party Events which are the same, related, or continuous and all . . . Third Party Events which arise from a common nucleus of facts."

---

occurring on or after the Retroactive Date and prior to the end of the Policy Period."  The parties do not dispute that Houlihan is accused of committing wrongful acts as defined by the AIG Policies.

II.  The Underlying Class Action Lawsuit

In July 2018, a class action lawsuit was filed against Houlihan in the Supreme Court of the State of New York, Westchester County.  A third amended complaint ("TAC") in the action was filed on June 10, 2019.  It seeks damages for Houlihan's alleged violations of the law from 2011 to June 10, 2019.

The TAC alleges that since at least January 1, 2011, Houlihan "deprived thousands of New Yorkers" of the right to be represented by a loyal real estate agent by "representing both the homebuyer and seller in the same transaction in undisclosed, non-consensual dual agency."  The TAC seeks to certify a class defined as "[a]ll buyers and sellers of residential real estate in Westchester, Putnam, and Dutchess counties from January 1, 2011 to the present wherein [Houlihan] represented both the buyer and seller in the same transaction."  The TAC describes in detail property sales occurring on June 30, 2014, July 13, 2016, and May 22, 2017.

III. Procedural History

On June 16, 2020, Great American filed this action seeking a declaratory judgment that AIG has an obligation to defend Houlihan in connection with the underlying class action.  Great

4

American filed this motion for summary judgment on November 6. AIG filed a cross-motion on December 4. The motions became fully submitted on January 22, 2021.

## Discussion

A motion for summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." Frost v. New York City Police Dep't, 980 F.3d 231, 242 (2d Cir. 2020) (citation omitted). In making this determination, the court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences and resolv[es] all ambiguities in its favor." Jaffer v. Hirji, 887 F.3d 111, 114 (2d Cir. 2018) (citation omitted). When deciding cross-motions for summary judgment, the court must construe the evidence in each case in the light most favorable to the non-moving party. Wandering Dago, Inc. v. Destito, 879 F.3d 20, 30 (2d Cir. 2018).

"Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).  The nonmoving party may rely neither "on conclusory statements," CIT Bank N.A. v. Schiffman, 948 F.3d 529, 532 (2d Cir. 2020) (citation omitted), nor on "mere speculation or conjecture as to the true nature of the facts."  Fed. Trade Comm'n v. Moses, 913 F.3d 297, 305 (2d Cir. 2019) (citation omitted).

An insurer has distinct duties to defend and indemnify its insured.  Under New York law,[2] "an insurer's duty to defend is exceedingly broad."  Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins. Co., 955 F.3d 305, 310 (2d Cir. 2020) (citation omitted).  An insurer has a duty to defend a suit "whenever the allegations of the complaint suggest a reasonable possibility of coverage."  Id. (citation omitted).  "Put another way, a defendant has no obligation to defend only if it can be concluded as a matter of law that there is no possible factual

---

[2] The parties' briefs assume that New York law controls.  This "implied consent . . . is sufficient to establish choice of law."  Alphonse Hotel Corp. v. Tran, 828 F.3d 146, 152 (2d Cir. 2016) (citation omitted).

or legal basis on which the defendant might eventually be held to be obligated to indemnify the [insured] under any provision of the insurance policies." Id. (citation omitted).

Additionally, "if any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." High Point Design, LLC v. LM Ins. Corp., 911 F.3d 89, 95 (2d Cir. 2018) (citation omitted). It is "immaterial that the complaint against the insured asserts additional claims which fall outside the policy's general coverage." Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co., 16 N.Y.3d 257, 265 (2011) (citation omitted).

An insurer's duty to defend "claims made against its policyholder is ordinarily ascertained by comparing the allegations of a complaint with the wording of the insurance contract." Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 144 (2d Cir. 2004). The initial interpretation of an insurance contract is a matter of law for a court to decide, "and if the wording on the duty to defend is clear and unambiguous, it will be enforced according to its terms." Id. Any "ambiguities in an insurance policy are to be construed against the insurer." In re Viking Pump, Inc., 27 N.Y.3d 244, 257 (2016) (citation omitted).

An insurer's duty to defend its insured is a contractual obligation.  Century 21, Inc. v. Diamond State Ins. Co., 442 F.3d 79, 83 (2d Cir. 2006).  Thus, "insurance policies are interpreted according to general rules of contract interpretation."  Olin Corp. v. OneBeacon Am. Ins. Co., 864 F.3d 130, 147 (2d Cir. 2017).  A contract should be "read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose."  Beal Sav. Bank v. Sommer, 8 N.Y.3d 318, 324-25 (2007) (citation omitted).  "When construing insurance policies, the language of the contracts must be interpreted according to common speech and consistent with the reasonable expectation of the average insured."  In re Viking Pump, Inc., 27 N.Y.3d at 257 (citation omitted).  Courts "must construe the policy in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect."  Id. (citation omitted).  To this end, "surplusage is a result to be avoided."  Id. (citation omitted).

Great American contends that AIG must contribute to Houlihan's defense in the underlying class action.  Great American is correct.

It is undisputed that the AIG Policies, which are retroactive to 2010, extend to Houlihan as a HomeServices subsidiary insofar as the claims against Houlihan arise from "Third Party Events occurring or allegedly occurring after the effective time that the Named Entity obtained Management Control of such Subsidiary."  It is undisputed as well that the class action claims against Houlihan constitute Third Party Events and that HomeServices acquired Houlihan on January 1, 2017.

The claims against Houlihan in class action span the period between 2011 and June 10, 2019 and include a property sale on May 22, 2017.  Since the claims in the class action arise in part out of activities in which Houlihan allegedly engaged after January 1, 2017, AIG is required to defend Houlihan.  AIG has not carried its burden to show that there is "no possible factual or legal basis on which [it] might eventually be held to be obligated to indemnify."  Brooklyn Ctr., 955 F.3d at 310.

AIG argues that it has no duty to defend Houlihan because, under the "related acts" term in the AIG Policies, all of the alleged property sales in which Houlihan participated are related acts and related acts are deemed to have occurred "at the time the first such Related Act occurred."  Since the first such wrongful act is alleged in the class action to have

9

occurred in 2011, six years before Houlihan became a HomeServices subsidiary, AIG asserts it has no duty to defend Houlihan.

This argument fails.  First, AIG has failed to show that there is no "possible factual or legal basis" for construing the term "related acts" against it.  The AIG Policies define "related acts" as all "Third Party Events which are the same, related, or continuous and all . . . Third Party Events which arise from a common nucleus of facts".  The property sales in which Houlihan participated after January 1, 2017 -- the date on which it was acquired by HomeServices -- are certainly not the "same" or "continuous" sales when considered with the pre-acquisition sales.  While the post-January 1, 2017 acts of non-disclosure are alleged to have arisen from a policy by Houlihan to conceal that it was representing both buyers and sellers of property in a single sale, it is not self-evident that the existence of that policy means that every property sale arises from a "common nucleus of facts".  The more commonsense construction of that term may be that each of the events or activities connected to a single property sale is a related act, as defined by the Policies, and that no sale is a "related act" vis a vis another sale.

10

AIG's argument also fails because AIG has not carried its burden to show that the definition of "related acts" applies at all to the provision in the AIG Policies identifying when coverage for subsidiaries begins. The term "related acts" does not appear there. In contrast, the term "related acts" appears in several other provisions of the AIG Policies, including the Exclusions, Notice, and Retention provisions. The presence of the term "related acts" elsewhere in the AIG Policies makes its absence in the subsidiary limitation noteworthy.

## Conclusion

Great American's November 6, 2020 motion for summary judgment is granted. AIG's December 4, 2020 cross-motion for summary judgment is denied.

Dated:    New York, New York
          April 6, 2021

_____
DENISE COTE
United States District Judge